UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

Daryl King                                    Civil Action No. 11-2054

versus                                        Judge Tucker L. Melançon

Unum Life Insurance Co. of America            Magistrate Judge Hanna

**RULING**

Before the Court are cross motions for summary judgment filed by plaintiff Daryl King,

*R. 18*, and by defendant Unum Life Insurance Company of America ("Unum"), *R. 22*, and their

respective memoranda in opposition thereto, *R. 24, 25*. For the reasons that follow, plaintiff's

Motion for Summary Judgment will be **DENIED** and defendant's Motion for Summary

Judgment will be **GRANTED**.

**I. Background**[1]

  A.  MAPP Construction, LLC's Long Term Disability Policy and King's Job Requirements

      Plaintiff Daryl King was employed by MAPP Construction, LLC as a Construction

Superintendent, *Administrative Record*, 000060, 000062, and was a participant in a disability

plan sponsored by MAPP and insured by Unum under contract number 139922 (the "Plan"), *A.R.*

000007, which is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C.

§ 1001 et seq. (hereinafter "ERISA").[2] Unum served as the Plan Administrator and was vested

with the discretion to review claims, to resolve factual disputes, to make decisions regarding

---

[1] The parties have stipulated that the administrative record filed into the record of this proceeding is complete. *R. 15.*

[2] The parties do not dispute that ERISA governs the benefit plan in this case. *R. 8.*

eligibility, and to interpret the Plan. *A.R.* 000130. The pertinent provisions of the Plan provided

that a participant is "disabled" when Unum determines that:

> [Y]ou are limited from performing the material and substantial duties of your regular
> occupation due to your sickness or injury, and you have a 20% or more loss in your
> indexed monthly earnings due to the same sickness or injury. . . . You must be under the
> regular care of a physician in order to be considered disabled.

*A.R.* 000105. Thus, in order to receive long term disability benefits under the Plan, an employee

must be limited from performing the material and substantial duties of his or her "regular

occupation." Regular occupation "means the occupation [the participant is] routinely performing

when [his or her] disability begins. Unum will look at [the participant's] occupation as it is

normally performed in the national economy, instead of how the work tasks are performed for a

specific employer or at a specific location." *A.R.* 000123.

Unum's Occupation Identification review for plaintiff's job determined that plaintiff's

occupation of Construction Superintendent, in the national economy, required "[e]xerting up to

20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible

amount of force constantly." *A.R.* 000164–65. It also required occasional sitting, stooping,

kneeling, crouching, crawling, and climbing, and frequent standing, walking, reaching, and

keyboard use. *Id.* Travel was also required. *Id.*

B.  King's Injury and Initial Treatment

Plaintiff injured his lower back and left leg at his home on February 12, 2010.[3] *A.R.*

000137. He did not cease working for MAPP until August 31, 2010. *A.R.* 000075. Plaintiff was

first examined by Dr. Charles Burnell, an emergency medicine physician, on the day he was

---

[3] It is disputed what plaintiff was doing when he injured himself, but that dispute is not relevant to the issue before the Court.

injured. *A.R.* 000279. Plaintiff complained of left lower back pain radiating into his left leg to his knee, with increasing pain that interfered with his ability to drive. *A.R.* 000282. Dr. Burnell ordered an MRI of his lumbar spine, which showed disk protrusion at L4-5 impinging on the L4 root, small central protrusion at L5-S1, and "[m]ild facet arthropathy and disk degenerative disease." *A.R.* 000284–85. Dr. Burnell diagnosed plaintiff with a lumbar herniated disc based on plaintiff's history, the doctor's physical examination, and the test results. *A.R.* 000285. He prescribed steroids, pain medication, and muscle relaxants, and referred plaintiff to Dr. Alan Appley, a neurosurgeon. *Id*.

On the same day, February 12, 2010, plaintiff also saw Dr. Amarendar Kasarla at Lafayette Surgical Specialty Hospital[4] and reported that he was "unable to move or do any work at home" and was "constantly having lower back pain with radiation to the left hip and left lateral thigh region." *A.R.* 000191. Dr. Kasarla's physical examination of plaintiff revealed "mild to moderate tenderness in the left paraspinal muscles at 3-4 region with decrease[d] sensation over left L3-4 dermatones . . . ." *Id*. Dr. Kasarla recommended left L3 and L4 lumbar transforaminal epidural steroid injections, which plaintiff received. *Id*. Dr. Kasarla also prescribed pain medication. *Id*. He recommended that plaintiff "rest [at] home today." *A.R.* 000193.

On March 22, 2010, on referral from Dr. Burnell, plaintiff was evaluated by neurosurgeon Dr. Alan Appley for aching in the left side of his lower back, tingling in his left leg to his knee, and weakness in his left leg. *A.R.* 000171. Plaintiff reported that his symptoms improved when he laid down and that medications had given him no relief, but the epidural

---

[4] The administrative record does not indicate Dr. Kasarla's specialty, but does note that plaintiff saw him for pain management. *A.R.* 000193.

injection had improved his symptoms. *Id.* Dr. Appley reviewed plaintiff's February 12, 2010 MRI and confirmed that it showed L4-5 disc herniation, and a small central protrusion at L5-S1. *Id.* Dr. Appley prescribed physical therapy, stating that "it is safe for him to carefully increase his activities now." *Id.* He also said that plaintiff needed "to start some type of home exercise program." *Id.* He prescribed a pain medication and noted that if plaintiff's pain increased, he would need to have another epidural injection. *Id.*

On March 23, 2010, plaintiff began physical therapy with Patricia Boulet. *A.R.* 000219. Plaintiff reported lower back pain, and Boulet noted that plaintiff had palpatory tenderness and spasms. *A.R.* 000227. Plaintiff continued physical therapy until June 24, 2010. *A.R.* 000258.

On May 11, 2010, August 23, 2010, and October 14, 2012, plaintiff visited Dr. Burnell and reported chronic pain. *A.R.* 000371.

On September 3, 2010, plaintiff reported to Dr. Kasarla that the February 12, 2010 epidural injection helped him for a few months, but that his lower back to left leg pain and numbness had increased. *A.R.* 000188. Dr. Kasarla gave plaintiff another lumbar epidural steroid injection. *Id.*

C. Administrative Claims Process

1. Initial Approval

On November 1, 2010, plaintiff completed the initial claim form for benefits, *A.R.* 000075, and on November 16, 2010, Dr. Burnell submitted an Attending Physician's Statement to Unum wherein he opined that plaintiff "is currently unable to perform work duties," and that plaintiff's restrictions and limitations were "no prolonged sitting ([more than one] hour) [and] no stooping, pushing, pulling, bending over forward[,] except occasionally . . . ." *A.R.* 000082–83.

Unum approved plaintiff's Long Term Disability benefit claim on December 8, 2010, and his benefits began effective November 30, 2010. *A.R.* 000202. Unum "approved [plaintiff's] benefits because [he was] unable to perform prolonged sitting (greater than one hour), no stooping, pushing, pulling, bending over forward (except occasionally) due to the symptoms related to [his] Lumbar Disc herniation [sic]." *Id.* Unum noted that they would follow up with plaintiff in one to two months in order to get updated information about his medical status and treatment. *Id.* In a conversation with plaintiff before Unum made its initial decision, Unum notified plaintiff that while they medically supported Dr. Burnell's restrictions and limitations, they expected improvements. *A.R.* 000140–41.

Unum made its initial decision after speaking with plaintiff and receiving medical records from Dr. Kasarla and Dr. Appley and the Attending Physician's Statement from Dr. Burnell. At the time it made its decision, Unum had not yet received medical records from Dr. Burnell or plaintiff's physical therapist, Patricia Boulet.

2.   Denial

After its initial decision, Unum continued to receive plaintiff's medical records, including records it requested as part of its initial review but did not receive until after its approval of the claim. Plaintiff resumed physical therapy on November 3, 2010. *A.R.* 000250. In November 2010, plaintiff reported increased pain to his physical therapist, including that his pain prevented him from walking more than one half mile, sitting for more than one hour, and driving more than one hour. *A.R.* 000258, 000261–62.

On January 26, 2011, a Unum representative spoke with plaintiff, who reported that he was in a lot of pain and could not ride in a car. *A.R.* 000294.  On February 14, 2011, Boulet sent

5

her office notes to Unum for plaintiff's visits from November 24, 2010 to February 3, 2011, which indicated that plaintiff reported doing better and having less tightness, *A.R.* 000323, 000329, 000332–33, but that he also reported persistent numbness in his left leg. *A.R.* 000326. Unum also received Dr. Burnell's office notes from visits on May 11, 2010, August 23, 2010, October 14, 2010, and January 12, 2011. *A.R.* 000371. Dr. Burnell submitted a narrative report on March 7, 2011, in which he listed multiple restrictions and limitations for plaintiff, including no sitting for over 20-30 minutes, no bending, lifting or twisting based on diagnosis, and limited standing for over 20-30 minutes, and gave the opinion that plaintiff was unable to return to work. *A.R.* 000353. In conversations with Dr. Burnell on February 24, 2011, *A.R.* 000342, and with plaintiff on March 18, 2011, *A.R.* 000403, Unum learned that plaintiff had traveled to Texas and to Chile.

On March 17, 2011, Unum decided to look further into plaintiff's medical condition and Dr. Burnell's assessment of plaintiff's restrictions and limitations. *A.R.* 000372. Unum made the decision to look further into plaintiff's medical status on the day that it performed a Comprehensive Business Report for plaintiff, *A.R.*000377, and found a report of a corporation named OSS Global, which listed as "Associated People" plaintiff Daryl King and "Chuck Barnell [sic]." *A.R.* 000382–84.[5]

Unum arranged for a physician review of plaintiff's file. On March 30, 2011, Dr. Daniel Krell, a family practice physician, reviewed plaintiff's medical records. *A.R.* 000413. While Dr. Krell acknowledged the diagnosis of lumbar radiculopathy, he gave the opinion that the restrictions and limitations given by Dr. Burnell were not supported by the available medical

---

[5] Unum later relied in part on this information as a reason to deny plaintiff's claim.

information and were overly pessimistic. *A.R.* 000415. He noted that the physical exams did not find dermatomal sensory loss or specific muscle weakness, that an electrodiagnostic study was never performed, and that it was reasonable to expect "more active diagnostic and therapeutic interventions" given the impairing symptoms reported. *Id.* Dr. Krell spoke by telephone with Dr. Burnell on March 31, 2011. *A.R.* 000417–18. Dr. Burnell repeated his opinion to Dr. Krell that plaintiff was unable to perform the duties of his job because he could not sit for extended periods of time, including sitting to be able to drive. *Id.* Dr. Burnell explained that plaintiff had only been able to travel because he was able to take breaks; Dr. Krell suggested that plaintiff should also be able to perform a light occupation with similar breaks. *A.R.* 000418. Dr. Krell did not change his initial opinion on plaintiff's limitations based on his telephone conversation with Dr. Burnell. *A.R.* 000421. In his addendum report, Dr. Krell noted that issues that influenced his decision included that "Dr. Burnell is a staff member and a director of a currently operating business owned and directed by Mr. King" and that there were inconsistencies regarding plaintiff's travel. *A.R.* 000421. He stated that "[i]nitial symptoms were consistent with the 2/12/10 MRI findings, but clinical exams do not document abnormal findings consistent with ongoing, active lumbar radiculopathy, and electrodiagnostic study has not been documented." *A.R.* 000422.

On April 5, 2011, Dr. Joseph Sentef, a family practice and occupational medicine physician, reviewed plaintiff's file. *A.R.* 000428–33. He concurred with Dr. Krell's conclusions. *A.R.* 000432. In support of his conclusion, he noted that further testing to support plaintiff's diagnosis had not been performed, that plaintiff had not pursued treatment for pain, and that the physical exam reports did not note dermatomal sensory loss or neurological deficits. *A.R.* 000432. He, like Dr. Krell, noted plaintiff's alleged business connection to Dr. Burnell and his

travel to Texas and to Chile. *Id.* Dr. Sentef misconstrued plaintiff's medical record by noting that

the first documentation of plaintiff's inability to sit at a desk to work on a computer was in

March 2011. *Id.* In actuality, one of the first restrictions or limitations set for plaintiff by Dr.

Burnell on November 16, 2010 was *no sitting for longer than one hour*. *A.R.* 000082.

On April 8, 2011, Unum informed plaintiff that they would discontinue paying him

disability benefits because he had the functional capacity to perform the duties of his occupation

as defined by the Plan. *A.R.* 000441. Unum noted, in particular, that despite his complaints of left

lower leg radiculopathy and lower back pain and Dr. Burnell's repeated assertions of plaintiff's

restrictions and limitations, "physical findings [had] not revealed any dermatomal sensory loss,

reflexes have been normal, and there has been no specific muscle weakness noted." *A.R.* 000443.

Unum also noted that plaintiff's travel to Texas and to Chile, his physical therapy, and his

frequent trips to the gym suggested that plaintiff was not as restricted as Dr. Burnell had

indicated. *Id.* In making its decision to discontinue payment of benefits to plaintiff, Unum relied

in part on Dr. Krell and Dr. Sentef's medical opinions.

    3.   Appeal and Decision Upholding Denial

On June 21, 2011, plaintiff requested that Unum reconsider the decision to terminate his

benefits. *A.R.* 000656. Plaintiff submitted medical records from the months after the denial in

support of his appeal. He submitted records from Dr. John Cobb, orthopedic surgeon, Dr.

Appley, Dr. Burnell, and Patricia Boulet. Plaintiff saw Dr. Cobb on May 16, 2011 and

complained of constant lower back and left leg pain. *A.R.* 000570. Dr. Cobb noted that in

addition to the pain plaintiff reported, the physical exam showed swelling, redness of joints, joint

deformities, weakness of limbs, and loss of sensation, but that he has "fairly full flexion" though

he complained of stiffness. *A.R.* 000572–73. He diagnosed disc degeneration and "primarily

nerve related symptoms in the L5 distribution on the left." *A.R.* 000574. Dr. Cobb counseled

plaintiff that he could either continue to manage his condition with exercise and epidural steroid

injections or that he could have surgery at L4-5. *Id.* Plaintiff was to make the decision whether or

not to have surgery based on whether he was able to manage his pain with more conservative

measures. *Id.* Dr. Cobb did not comment on plaintiff's restrictions or limitations or his ability to

work.

On June 15, 2011, plaintiff had X-Rays and an MRI, ordered by Dr. Appley, and the

radiologist noted degenerative disease.  *A.R.* 000637. Plaintiff submitted that MRI to Unum for

consideration in his appeal.  *A.R.* 000663. Dr. Appley recommended microdiscectomy surgery,

but did not comment on plaintiff's restrictions or limitations or his ability to work.  *A.R.* 000635.

Plaintiff visited Dr. Burnell on March 7, 2011 and June 27, 2011. *A.R.* 000746. Plaintiff reported

that he was still having pain, weakness, and problems driving and sitting.  *Id.* On June 27, 2011,

Dr. Burnell reviewed plaintiff's June 15, 2011 MRI and noted that the images confirmed

plaintiff's diagnosis. *Id.*  He also noted muscle wasting and atrophy. *Id.* Between February 3,

2011 and June 22, 2011, plaintiff attended physical therapy once on February 3, 2011, and then

regularly from March 2, 2011 until June 16, 2011. *A.R.* 000604–19. Plaintiff had several

telephone conversations with Unum during the months after his denial, during which he reported

pain. *A.R.* 000490, 000590.

In considering plaintiff's request for reconsideration of its decision, Unum did not ask

plaintiff to submit to an independent medical examination but rather had a neurosurgeon, Dr.

Charles Sternbergh, review plaintiff's medical records. On August 31, 2011, plaintiff's medical

records, including the June 15, 2011 MRI images, were reviewed by Dr. Sternbergh. *A.R.* 000759–62. Dr. Sternbergh concluded that plaintiff was capable of working with accommodations, including repositioning at hourly intervals. He described plaintiff's complaints of subjective pain, but noted that the record did not show any consistent "severe pressure on the neural elements, . . . nerve root irritation[,] or neurological abnormality," and therefore that the complaints did not correlate with plaintiff's medical records.  *A.R.* 000761–62. He agreed with Dr. Cobb that surgery was an option, but should only be pursued based on plaintiff's complaints of pain. *A.R.* 000762. He noted that plaintiff had not yet chosen to use analgesic medications or aggressive medical pain management strategies. *Id.*  For those reasons, he concluded that plaintiff should be able to perform a job requiring light physical demands. *Id.*

On September 23, 2011, Richard Byard, Vocational Rehabilitation Consultant, performed a Vocational Review for Unum. *A.R.* 000769. Byard's review confirmed the initial Occupational Identification review for plaintiff's job, as set out above, and opined that plaintiff's occupation "would afford sufficient flexibility so as to permit physical position changes, at hourly intervals if necessary, throughout the work day." *A.R.* 000769–70.

In an October 3, 2011 letter to plaintiff upholding its previous decision, Unum stated that Dr. Burnell's opinion and plaintiff's assertions of pain and inability to sit or travel indicating that plaintiff could not work was contrary to plaintiff's imaging and clinical exams, his failure to use pain medications, and his ability to travel. *A.R.* 000779–83. Unum relied on its physicians' opinions that plaintiff's "persistent symptoms of back and left leg pain would not preclude [him] from performing light physical demands with appropriate accommodations that allow repositioning at hourly intervals if necessary." *A.R.* 000781. It also noted Dr. Sternbergh's

10

conclusion that the plaintiff's "reports of severely limiting symptoms of pain are not consistent with the clinical exams, diagnostic findings, and level of treatment." *Id.* Based on their review, Unum upheld its decision to deny benefits because its doctors found that plaintiff did not meet the definition of disability under the Plan. *A.R.* 000782.

D.  Summary Judgment Standard

A motion for summary judgment shall be granted if the pleadings, depositions, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.,* 37 F.3d 1069 (5th Cir. 1994) *(en banc).* Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id.* If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the non-moving party to show that there is a genuine issue for trial.[6] *Id.* at 322–23. Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial.

---

[6] Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.,* 477 U.S. at 325. To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the nonmoving party of these essential elements renders all other facts immaterial. *Id.* at 322.

*Celotex Corp.,* 477 U.S. at 324; Fed. R. Civ. P. 56(e). There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249; *Wood v. Houston Belt & Terminal Ry.,* 958 F.2d 95, 97 (5th Cir. 1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(c); *Celotex Corp.,* 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

E.   Standard of Review – ERISA Claims

The United States Court of Appeals for the Fifth Circuit has held that when a "plan . . . grant[s] the plan administrator discretionary authority to . . . determine eligibility for benefits, a plan's eligibility determination must be upheld by a court unless it is found to be an abuse of discretion." *Atkins v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 694 F.3d 557, 566 (5th Cir. 2012) (citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008)).  In this case, the Plan at issue grants the Plan Administrator discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. Accordingly, review for abuse of discretion is the appropriate standard to be used by the Court in resolving the dispute in this case.

In the context of ERISA, the abuse of discretion standard of review "is the functional equivalent of arbitrary and capricious review." *Anderson v. Cytec Industries, Inc.*, 619 F.3d 505, 512 (5th Cir. 2010). A decision is arbitrary if it is made "without a rational connection between the known facts and the decision or between the found facts and the evidence." *Atkins*, 694 F.3d at 566 (citing *Holland v. Int'l Paper Co. Ret. Plan,* 576 F.3d 240, 246 (5th Cir. 2009)). Furthermore, an administrator must have "substantial evidence" to support its decision to deny or terminate benefits. *Id.* (citing *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273–74 (5th Cir. 2004)). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Ellis*, 394 F.3d at 273).

In *Metropolitan Life Insurance Company v. Glenn*, 554 U.S. 105 (2008), the Supreme Court stated that a structural conflict of interest created by the plan administrator's dual role in making benefits determinations and paying benefits claims "should be taken into account on judicial review of a discretionary benefit determination." *Id.* at 115. In considering the Court's ruling in *Glenn*, the Fifth Circuit has stated:

> If the administrator has a conflict of interest, [the court should] weigh the conflict of interest as a factor in determining whether there is an abuse of discretion in the benefits denial, meaning [the court should] take account of several different considerations of which conflict of interest is one.

*Holland*, 576 F.3d at 247 (internal quotations omitted). The Fifth Circuit further stated:

> In reviewing the plan administrator's decision, we take into account . . . several different considerations. . . . These factors are case-specific and must be weighed together before determining whether a plan administrator abused its discretion in denying benefits. Any one factor may act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance.

*Schexnayder v. Hartford Life & Acc. Ins. Co.,* 600 F.3d 465, 469 (5th Cir. 2010) (quotation marks and citations omitted).

## II. Analysis

### A.  Conflict of Interest

Plaintiff disputes Unum's findings and argues that Unum and the physicians that reviewed his medical records at Unum's request arbitrarily disregarded his treating physicians' opinions, which were based on objective medical evidence in the record, because they were acting under a conflict of interest as Unum determined who was eligible for benefits and also had the obligation to pay benefits if disability were found to exist. When the plan administrator "both evaluates claims for benefits and pays benefits claims," as in this case, the Court must weigh the conflict of interest as a factor in determining whether there is an abuse of discretion in the benefits denial. *Glenn*, 554 U.S. at 112. "The weight that this conflict will have relative to other factors changes, however, depending upon the circumstances of a particular case." *Schexnayder*, 600 F.3d at 470. When a claimant provides no evidence of the degree of the conflict or how the conflict influenced the benefits decision, the court will generally find that the conflict is "not a significant factor."  *Holland*, 576 F.3d at 249; *see also Glenn*, 554 U.S. at 117–18 (discussing factors to be evaluated in considering administrator's conflict of interest).  In this case, plaintiff has provided limited evidence of how Unum's conflict of interest influenced its benefits decision. Plaintiff points to Unum's initial letter of discontinuance, its characterization of plaintiff's travel to Texas and to Chile and his ability to go to physical therapy and to the gym as evidence of functional capacity, and its decision to discontinue benefits without having received medical evidence showing a change in plaintiff's condition and argues that Unum arbitrarily

relied on that insignificant evidence to support their decision to discontinue benefits because

Unum was driven by financial interest. Plaintiff submits nothing else in his attempt to establish

how the conflict played a role in Unum's decision to deny Long Term Disability benefits under

the Plan. Accordingly, the Court having considered Unum's conflict of interest, based on the

particular circumstances of this case as demonstrated by the administrative record, finds the

conflict not to be a significant factor. The Court considered the conflict, as well as the other

evidence contained in the administrative record, in determining whether Unum's decision to

discontinue and not to reinstate plaintiff's Long Term Disability benefits suggests procedural

unreasonableness.

B.   Abuse of Discretion

a.   Unum's Change in Position

Plaintiff argues that Unum abused its discretion by initially approving plaintiff's claim

and subsequently stopping benefits and denying his claim.  However, the Fifth Circuit has stated

that

> when a plan fiduciary initially determines that a covered employee is eligible for benefits
> and later determines that the employee is not, or has ceased to be, eligible for those
> benefits by virtue of additional medical information received, the plan fiduciary is not
> required to obtain proof that a substantial change in the [long term disability] recipient's
> medical condition occurred after the initial determination of eligibility.

*Ellis*, 394 F.3d at 274. Here, after making its initial decision approving plaintiff's claim, Unum

received medical records from plaintiff's physical therapist, *A.R.* 000216–36, 000310–35, and

Dr. Burnell, *A.R.* 000280–85, 000369, had telephone conversations with both plaintiff and Dr.

Burnell, *A.R.* 000294, 000342, 000403, and had two physicians review plaintiff's file, *A.R.*

000414–33. Unum was not required to prove a substantial change in plaintiff's medical

15

condition, and therefore its initial approval and subsequent denial is not, in and of itself, proof of an abuse of discretion, particularly in light of the entirety of the administrative record before the Court.

      b.   Substantial Evidence for Defendant's Decisions

Plaintiff also argues that Unum abused its discretion in several other ways. First, plaintiff argues that the best evidence of his disability comes from his treating physicians.  Plaintiff's treating physician Dr. Burnell maintains that plaintiff is unable to work due to degenerative disc disease and lumbar radiculopathy and the accompanying impairing pain. Neither Dr. Kasarla, Dr. Appley, nor Dr. Cobb opined that plaintiff was unable to work. Unum's reviewing physicians Dr. Krell, Dr. Sentef, and Dr. Sternbergh disagreed with Dr. Burnell's assessment of plaintiff's restrictions, thus his inability to work at his occupation as defined by the Plan. The Supreme Court in *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003), held that "plan administrators are not obliged to accord special deference to the opinions of treating physicians." Of course, plan administrators may not "arbitrarily refuse to credit" the opinions of the treating physician. *Id.* at 834.  Here, Unum and the physicians it had review plaintiff's medical records considered the opinions of Dr. Burnell, Dr. Kasarla, Dr. Appley, and Dr. Cobb and came to a different conclusion. *A.R.* 000781. The Fifth Circuit has stated that "the job of weighing valid, conflicting professional medical opinions is not the job of the courts; that job has been given to the administrators of ERISA plans." *Corry v. Liberty Life Assur. Co. of Boston*, 499 F.3d 389, 401 (5th Cir. 2007). Based on the administrative record before the Court, Unum did not abuse its discretion in not relying on the opinion of Dr. Burnell.

Similarly, plaintiff argues that Unum should have ordered a physical examination of plaintiff, rather than merely having physicians review his medical records. A plan administrator's decision to have a physician conduct a file review, rather than a physical examination, is not per se arbitrary. *Gooden v. Provident Life & Accident Ins., Co.*, 250 F.3d 329, 335 (5th Cir. 2001). In *Gooden,* the Fifth Circuit held that the plan administrator did not abuse its discretion by relying upon the assessment of a physician who had not examined the plaintiff because objective medical information in the records could confirm the plaintiff's condition. *Id.* Plaintiff's medical records contain both objective and subjective bases for his asserted condition, i.e. the results of objective tests and subjective complaints of pain. Based on the administrative record, the best course might have been for Unum to have had plaintiff undergo an independent medical examination. However, based on that same record, the Court cannot find that Unum abused its discretion in not requiring plaintiff to undergo a medical examination, given the results of the objective tests and the thorough consideration of plaintiff's complaints of subjective pain by Drs. Krell, Sentef, and Sternbergh, upon which Unum relied.

While many cases, including cases out of this Court, have held that subjective accounts of pain cannot be summarily dismissed, *see, e.g.*, *Tesch v. Prudential Ins. Co. of America*, 829 F. Supp. 2d 438, 497–99 (W.D. La. 2011); *Schully v. Cont'l Cas. Co.*, 634 F. Supp. 2d 663, 683 (E.D. La. 2009), *aff'd* 380 F. App'x 437 (5th Cir. 2010); *Audino v. Raytheon Co. Short Term Disability Plan,* 129 F. App'x 882, 885 (5th Cir. 2005), a plan administrator's decision is not arbitrary or capricious as long as it considers, evaluates, and addresses the claimant's subjective complaints, *Corry*, 499 F.3d at 401; *see also Anderson*, 619 F.3d at 514.  Unum's final letter of denial noted plaintiff's reports of back pain that prevented him from being able to sit. *A.R.*

000780. It also noted Dr. Sternbergh's consideration of plaintiff's "persistent symptoms of back and leg pain," and his opinion that plaintiff's reported symptoms would "not preclude [him] from performing light physical demands with appropriate accommodations that allow repositioning at hourly intervals if necessary." *A.R.* 000780–81. Rather than ignoring plaintiff's subjective complaints of pain, Unum and its consulting physicians considered them and found them to be insufficient to support a disability, as defined by the Plan.

Next, plaintiff suggests that because he can show evidence to support his claim of disability, Unum's determination was arbitrary and capricious. However, "the law requires only that substantial evidence support a plan fiduciary's decisions, including those to deny or to terminate benefits, not that substantial evidence (or, for that matter, even a preponderance) exists to support the employee's claim of disability." *Corry*, 499 F.3d at 402 (citing *Ellis*, 394 F.3d at 273). As long as there exists substantial evidence in the administrative record to support Unum's denial of plaintiff's claim, the Court must uphold that decision, even if the evidence is disputable. *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533 (5th Cir. 2012) (citing *Holland*, 576 F.3d at 246). "Ultimately, [the court's] review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness-even if on the low end." *Anderson*, 619 F.3d at 512 (citing *Corry*, 499 F.3d at 398).

Plaintiff also argues that plaintiff is disabled under the Plan because he is unable to perform the responsibilities of his position at MAPP Construction as he describes the job responsibilities.  However, under the Plan, to determine the responsibilities of a claimant's regular occupation, "Unum will look at [the claimant's] occupation as it is normally performed

in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location." *A.R.* 000123. Unum determined that plaintiff's occupation as Construction Superintendent, as performed in the national economy, included:

> exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly. . . . Occasional: Sit, stoop, kneel, crouch, crawl, climb . . . . Frequent: Stand, walk, reach, keyboard use . . . . Travel would be a requirement of the occupation.

*A.R.* 000163–64.  Plaintiff's actual responsibilities at MAPP Construction are not relevant under the Plan.

Unum argues that substantial evidence supported its decision. The Court agrees. Unum appears to accept, based on the objective medical data and diagnoses, that plaintiff suffers from degenerative disc disease and lumbar radiculopathy. Its decision to deny benefits instead rests upon its assessment of what those data and diagnoses mean in terms of plaintiff's physical limitations and therefore his ability to work. Its determination was supported by three consulting physicians, including a family practice physician, a family practice and occupational medicine physician, and a neurosurgeon. Dr. Krell reviewed plaintiff's medical records and had a telephone conversation with Dr. Burnell, plaintiff's treating physician. He noted a lack of objective evidence of plaintiff's inability to work. He discussed his concerns with Dr. Burnell and did not find Dr. Burnell's responses to be persuasive.  Dr. Sentef similarly noted a lack of objective evidence of plaintiff's restrictions and limitations. Dr. Sternbergh reviewed plaintiff's medical records, including his June 2011 MRIs, and concluded that plaintiff's records did not support his inability to work. Dr. Sternbergh also noted that despite plaintiff's complaints of pain, he was not using pain medications. In its letters explaining its denial of benefits to plaintiff, Unum acknowledged Dr. Burnell's opinion that plaintiff could not work, but relied on its

consulting physicians' opinions that objective evidence did not support plaintiff's inability to work and that plaintiff, in spite of his pain, could perform light physical demands given the ability to change positions. Ultimately, in the "'battle of the experts[,]' the administrator is vested with discretion to choose one side over the other." *Corry*, 499 F.3d at 401. All three consulting physicians concluded that there was a lack of objective evidence supporting plaintiff's inability to work, and their conclusions serve as substantial evidence to support Unum's decision to discontinue paying benefits to plaintiff.

Plaintiff argues Unum's consideration of his ability to travel to Texas and to Chile in its decision to deny his benefits was an abuse of discretion. He argues that he was only able to travel to Texas because as a passenger, he was able to recline and to take breaks. Unum noted his ability to make accommodations during the five hour trip to Texas in its explanation of its decision. *A.R.* 000780. Plaintiff also argues that Unum abused its discretion by relying on plaintiff's ability to go to the gym in its decision to deny plaintiff's benefits. Unum did not note plaintiff's ability to go to the gym or physical therapy in its final denial letter, *A.R.* 000779–83, however, his ability to travel to the gym and physical therapy was noted in the initial denial letter. *A.R.* 000443. While plaintiff's ability to travel as a passenger to Texas and to Chile provides some evidence of his ability to travel as a driver as required by his occupation, it is not precisely comparable and thus cannot by itself support a conclusion regarding plaintiff's abilities.  *See, e.g.*, *Bray v. Fort Dearborn Life Ins. Co.*, 312 F. App'x 714, 716 (5th Cir. 2009) (unpublished) (upholding district court decision that substantial evidence did not exist where surveillance videos showed activities incomparable to plaintiff's work); *Schully v. Cont'l Cas. Co.*, 634 F. Supp. 2d 663, 672 (E.D. La. 2009), *aff'd*, 380 F. App'x 437 (5th Cir. 2010) (granting

disability claim for plaintiff with lumbar spine disease who traveled abroad); *accord Patterson v. Prudential Ins. Co. of Am.*, 693 F. Supp. 2d 642, 657 (S.D. Tex. 2010) (finding that limited surveillance of plaintiff walking and driving did not "by itself support a conclusion either way as to Plaintiff's capabilities"). However, as set out above, substantial evidence is contained in the administrative record for Unum's decision notwithstanding plaintiff's travel.

In finding substantial evidence to support Unum's decision, the Court did not consider and consequently did not rely upon the alleged business relationship between plaintiff and his treating physician, Dr. Burnell.  Throughout the administrative record, Unum and its physicians make reference to the allegation that plaintiff and his treating physician are both linked to the same corporation. As the Supreme Court has noted in its case rejecting the "treating physician rule," "if a consultant engaged by a plan may have an 'incentive' to make a finding of 'not disabled,' so a treating physician, in a close case, may favor a finding of 'disabled.'" *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832 (2003). While evidence that plaintiff's treating physician may have known plaintiff outside of the doctor-patient relationship could provide some evidence of bias, Unum does not explain how the alleged relationship influenced Dr. Burnell's decision, other than that its physicians believed that Dr. Burnell's conclusion about plaintiff's ability to work was not accurate. Plaintiff's relationship with his treating physician was not considered by the Court in its determination that the administrative record contained substantial evidence to support Unum's decision to discontinue the payment of Long Term Disability benefits to plaintiff and to ultimately deny his claim.

C.  Attorney's Fees

Plaintiff seeks an award of attorney's fees under ERISA. An award of attorney's fees in an ERISA action is purely discretionary. 29 U.S.C. § 1132(g)(1); *Salley v. E.I. DuPont de Nemours & Co.,* 966 F.2d 1011, 1016 (5th Cir. 1992). The Supreme Court has held that a fees claimant must show "'some degree of success on the merits' before a court may award attorney's fees under § 1132(g)(1)." *Hardt v. Reliance Standard Life Ins. Co.*, 130 S. Ct. 2149, 2158 (2010). Here, plaintiff failed to prevail on the merits, and an award of attorney's fees to plaintiff fails as a matter of law.

## III. Conclusion

Substantial evidence is contained in the administrative record before the Court to support Unum's decision to discontinue paying Long Term Disability benefits to plaintiff. Plaintiff's Motion for Summary Judgment, *R. 18*, will be **DENIED** and defendant's Motion for Summary Judgment, *R. 22*, will be **GRANTED**.

**THUS DONE AND SIGNED** at Lafayette, Louisiana this 18th day of December, 2012.

Tucker L. Melançon
UNITED STATES DISTRICT JUDGE